```
                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SAMUEL CHISHOLM, JR.,<br><br>           Appellant,<br><br>     v.<br><br>CENDANT MORTGAGE<br>CORPORATION,<br><br>           Appellee. | CIVIL NO. 04-6398 (JBS)<br><br>ON APPEAL FROM AN ORDER OF THE<br>UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br>Sat Below:<br>Judge Gloria M. Burns<br>[Case No. 04-32569]<br><br>**OPINION** |

APPEARANCES:

David Paul Daniels, Esq.
3300 Federal Street
Camden, New Jersey 08105
     Attorney for Debtor-Appellant

Ray A. Lebron, Esq.
FEDERMAN & PHELAN, P.C.
51 Haddonfield Road
Cherry Hill, New Jersey 08002
     Attorney for Appellee

**SIMANDLE**, District Judge:

     This matter is presently before the Court upon the appeal of an Order issued on December 2, 2004 in the United States Bankruptcy Court by the Honorable Gloria M. Burns, United States Bankruptcy Judge.  The issue presented on this appeal is whether a debtor who filed a Chapter 13 bankruptcy petition can cure the arrears of a mortgage on his principal residence, pursuant to 11 U.S.C. § 1322(c)(1), after the sheriff has held a sheriff's sale (auction) of the real estate but prior to the sheriff's actual delivery of the deed to the successful bidder.  For the reasons

discussed below, this Court concludes that a New Jersey foreclosure sale is complete when the sheriff delivers the deed to the successful purchaser and a Chapter 13 debtor may therefore cure a default and reinstate a residential mortgage until the point of actual delivery of that deed to the purchaser.

### BACKGROUND

On October 9, 2002, based on the failure of Samuel Chisholm, Jr. ("Chisholm" or "Appellant") to make mortgage payments, Cendant Mortgage Corporation, servicer for ESL Federal Credit Unit ("Cendant" or "Appellee"), filed a foreclosure action in the New Jersey Superior Court, Chancery Division, on real estate located at 1701 Breckenridge Drive, Sicklerville, New Jersey.  A sheriff's sale of the subject property was scheduled, pursuant to a foreclosure judgment obtained by Cendant, for July 7, 2004.

On that date, at approximately 12:00 p.m., the secured property was auctioned at the sheriff's sale and sold to a third party purchaser, Joseph Montenegro c/o Remax Home Team, for the sum of $151,000.00.  Later that same day, at approximately 3:38 p.m., Appellant filed for protection under Chapter 13 of the United States Bankruptcy Code.  (See Appellant's Ex. A.)

The Sheriff of Camden County did not collect the purchase price nor deliver the deed to Mr. Montenegro, as he was notified by Appellant's attorney of the bankruptcy filing.  (Appellant's

Ex. B.)  In addition, the automatic stay provision of 11 U.S.C. § 362(a) restrained the Sheriff from delivering the deed.

Appellant's Chapter 13 plan proposed to cure the arrears of the mortgage held by Cendant in the amount of $21,000.00 (Appellant's Ex. C.)  On September 20, 2004, Cendant filed a prospective motion for relief from the automatic stay. (Appellant's Ex. D.)  The bankruptcy court heard the motion on October 12, 2004, and, by order dated December 2, 2004, the Honorable Gloria M. Burns granted that motion over the debtor's objection.  (Appellant's Ex. F.)  The bankruptcy court also granted the Appellant's oral request for a stay of Cendant's order vacating stay, pending appeal to the district court. (Appellant's Ex. G.)  This appeal followed.

## DISCUSSION

Standard of Review

The district court has jurisdiction to review orders entered by the bankruptcy court pursuant to 28 U.S.C. § 158, which provides the district court with authority to hear appeals from "final judgments, orders, and decrees of the Bankruptcy Court" and from "other interlocutory orders and decrees" with leave of court.  See 28 U.S.C. § 158(a).[1]

---

[1]28 U.S.C. § 158(a) provides, in pertinent part:

The district courts of the United States shall have jurisdiction to hear appeals
    (1)   from final judgments, orders, and

This Court must review the bankruptcy court's findings of fact for clear error, its conclusions of law de novo, and its exercises of discretion for abuse of discretion.  See In re Top Grade Sausage, Inc., 227 F.3d 123, 125 (3d Cir. 2000) (citing In re Engel, 124 F.3d 567, 571 (3d Cir. 1997)); In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).  A bankruptcy court only abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.  See O'Brien Envtl., 188 F.3d at 122 (citing Marco v. Accent Pub. Co., 969 F.2d 1547, 1548 (3d Cir. 1992)).

Analysis of the Relevant Law

Appellant appeals from the bankruptcy court's ruling that the debtor's right to cure mortgage arrears via a Chapter 13 bankruptcy plan terminated at the close of the sheriff's sale auction, which occurred approximately three and a half hours

---

            decrees;
(2)    from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
(3)    with leave of the court, from other interlocutory orders and decrees;
and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

before Appellant filed his bankruptcy petition, when the gavel fell, rather than upon delivery of the deed.  Bankruptcy courts in the District of New Jersey are split, with some following the "gavel rule", see, e.g., In re Simmons, 202 B.R. 198 (D.N.J 1997); In re Siyambe, 200 B.R. 790 (D.N.J. 1996); In re Little, 201 B.R. 98 (D.N.J. 1996), and others following the "deed-delivery rule."  See, e.g., In re Downing, 212 B.R. 459 (D.N.J. 1997); In re Ross, 191 B.R. 615 (D.N.J. 1996).  The Third Circuit Court of Appeals has not yet spoken to this issue.

In relevant part, 11 U.S.C. § 1332 provides that a Chapter 13 bankruptcy plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
> (3) provide for the curing or waiving of any default;
>         . . .
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . .

11 U.S.C. § 1332(b).  The Bankruptcy Reform Act of 1994, Pub. L. No. 103-394 (codified as amended at 11 U.S.C. §§ 101, et seq. (1994)) added a provision to Chapter 13 which sought to clarify

5

the termination point for curing default.  Section 1322(c) provides in relevant part:

>    (c)   Notwithstanding subsection (b)(2) and applicable nonbankruptcy law -
>
>    (1)   a default with respect to, or that gave rise to, a lien on the principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is <u>sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law</u>.

11 U.S.C. § 1332(c) (emphasis added).

Until the Third Circuit's decision in <u>In re Roach</u>, 824 F.2d 1370 (3d Cir. 1987), all of the Federal Courts of Appeals had held that the right to cure continues up until the time of a foreclosure sale.  The Third Circuit decided in <u>In re Roach</u>, however, that a debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the actual foreclosure sale.  <u>Id</u>.  Congress subsequently determined that this decision was "in conflict with the fundamental bankruptcy principal of allowing a debtor a fresh start through bankruptcy" and enacted § 1322(c)(1) in response.

The question presented to this Court on appeal is whether the residence is considered "sold" at a foreclosure sale when the gavel drops at auction or when the deed is ultimately delivered to the purchaser.  In any case turning on statutory interpretation, a court's goal is to ascertain the intent of Congress.  <u>Dole v. United Steelworkers of America</u>, 494 U.S. 26,

6

35 (1990).  To accomplish this goal, the court looks first at the statute's language.  If the language is plain, the court need look no further.  United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989).  If the statutory language is ambiguous or unclear, the court may look behind the language to the legislative history for guidance.  United States v. Sherman, 150 F.3d 306, 313 (3d Cir. 1998).

Here, the statutory language of § 1332(c)(1) is undoubtedly ambiguous.  The preposition "at" in the phrase "sold at a foreclosure sale" suggests that Congress intended to designate a uniform point in time for the termination of the debtor's right to cure, namely the foreclosure sale itself, which would effectively preempt the variations that would necessarily result from applying the laws of the different states.  On the other hand, the phrase "that is conducted in accordance with applicable nonbankruptcy law" modifies "foreclosure sale," and would thus require that one resort to the relevant state law provisions governing the sale of property at a foreclosure sale in order to determine when that property is actually sold.  Indeed, the ambiguity in language is responsible, at least in part, for the split in interpretation of § 1322(c)(1) in this District.  In order to resolve the conflict which results from the ambiguity of the statutory text, this Court turns next to the relevant legislative history for guidance.

7

The legislative history of § 1332(c)(1) states, in pertinent part:

> This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law.  However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.

H.R. Rep. 103-835, 103rd Cong., 2nd Sess. 53 (Oct. 4, 1994); 140 Cong. Rec. 10752-01, 10769 (Oct. 4, 1994); U.S. Code Cong. & Admin. News 1994 pp. 3340, 3361.  Appellee argues that the legislative history suggests Congress was concerned with creating uniformity with respect to when the debtor's right to cure terminates, thereby preempting variances caused by conflicting state laws.  This Court disagrees insofar as it concludes that Congress meant not to create a ceiling on the debtor's right to cure, but rather a minimum floor.

Looking to this legislative history, the Court believes that Congress, in enacting § 1322(c)(1), intended that a debtor's rights would continue at least to the time of a sale and that if certain states provided debtors "more extensive cure rights," then that debtor should benefit therefrom.  The Court thus agrees with the Honorable Judith Wizmur's conclusion in In re Ross, supra, 191 B.R. at 618, that if Congress had intended for a debtor's right to cure to uniformly terminate at the sheriff's

sale, it could have stated as much.  Clearly, if Congress had intended for the statute to terminate a homeowner's rights in his property prior to the completion of the foreclosure sale, as defined under applicable (and likely, varying) state law, it could have expressed that.  For example, Congress could have said, though it did not, that the debtor may cure arrears "until the sale" or "until the date of the foreclosure sale."  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).  Congress instead placed the date of termination at the point when the sale is final under "applicable nonbankruptcy [state] law," knowing that the applicable date would necessarily vary from state to state.

   Moreover, the legislative history illustrates Congress' desire to ensure that the debtor's right to cure is protected "at least through completion of a foreclosure sale under applicable nonbankruptcy law" (emphasis added).  This concern does not lend itself to the creation of the bright line rule embraced by the "gavel" line of cases and advocated here by the Appellee.  The phrase "at least through" suggests Congress contemplated that the debtor's right to cure might extend, depending on a given state's "applicable nonbankruptcy law," beyond the foreclosure sale itself, the minimum floor expressed in § 1322(c)(1).  Congress' intent was not to reduce the cure rights previously possessed by

9

debtors, but rather to provide a uniform minimum floor of rights and, in so doing, extend the rights of those debtors whose jurisdictions were unduly restrictive, while not cutting back on jurisdictions having a more expansive rule before a sale is deemed complete.  This interpretation is particularly plausible given the fact that Congress enacted § 1322(c)(1) in response to the Third Circuit's restrictive holding in In re Roach, which fixed the termination point for the right to cure at the time of the foreclosure judgment, and which Congress found to be in conflict with the important bankruptcy principal of granting a debtor a fresh start through bankruptcy.  Thus, this Court's interpretation of § 1322(c)(1) is wholly consistent with the concerns of Congress as known at the time of the statute's enactment and as borne out in the legislative history.

Turning next to the more specific question of when Appellant's right to cure terminated here, the Court must look to the applicable nonbankruptcy law of New Jersey for guidance.  The debtor's opportunity to cure under § 1322(c)(1) terminates when the property is "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law."  In New Jersey, as comprehensively discussed by Judge Wizmur in In re Ross, supra, a judicial foreclosure sale is not complete until the deed is delivered to the successful sheriff's sale bidder.  Under New Jersey law, to foreclose on a mortgage, the mortgagee must file

an action to foreclose upon the mortgage, N.J.S.A. § 2A:50-2, obtain a judgment of foreclosure and a writ of execution directing the sale of the mortgaged property, N.J.S.A. § 2A:50-36, and sell the property, through the sheriff or other authorized person, to the highest bidder.  N.J.S.A. § 2A:50-37. The sheriff is afforded two weeks to deliver the deed after sale. N.J.S.A. § 2A:50-64.  Pursuant to state court rule, the sheriff is directed to "deliver a good and sufficient conveyance" unless an objection is served upon him within 10 days after the sale or at any time before the deed is delivered.  N.J. Court R. 4:65-5. The mortgagor is permitted to redeem within the ten-day period fixed by R. 4:65-5 for objections to the sale and until an order confirming the sale if objections are filed under the rule. Hardyston Nat'l Bank v. Tartamella, 267 A.2d 495 (N.J. 1970). Moreover, legal title does not vest in the purchaser until delivery of the deed.  Union County Savings Bank v. Johnson, 510 A.2d 288 (N.J. Super. Ct. Ch. Div. 1986).

    This methodic, highly regimented process in New Jersey thus suggests that the point of finality is reached under New Jersey law not at the fall of the gavel at the sheriff's sale, but at the expiration of the ten-day period of objection and ultimate conveyance of the sheriff's deed to the purchaser.  In this Court's view, the completion of this entire sale process – culminated by the actual delivery of the sheriff's deed – is the

most definitive point in time for the "completion of a foreclosure sale" because the sale of the property becomes final under state law. See In re Ross, 191 B.R. at 621. Thus, consistent with this determination, Appellant may still seek to cure the default on his mortgage arrears through his Chapter 13 bankruptcy plan, and the Order lifting the automatic stay against delivery of the sheriff's deed will be reversed.

## CONCLUSION

For the reasons discussed above, this Court will reverse the decision of the Bankruptcy Court which lifted the automatic stay against delivery of the sheriff's deed, and remand this case for further proceedings consistent with 11 U.S.C. § 1332(b)(3) or (b)(5), pursuant to 11 U.S.C. § 1322(c)(1). The accompanying Order will be entered.

**June 27, 2005**           s/ *Jerome B. Simandle*
DATE                           JEROME B. SIMANDLE
                                      United States District Judge